## FALSE PRETENSES IN SECURING PAYMENT OF A DRAFT.

[Circuit Court of Summit County.]

CHARLES A. SEMLER v. THE STATE OF OHIO.

Decided, April, 1905.

*Criminal Law—False Pretenses—By a Note Broker Who Procured the Cashing of a Draft—By Representing that Its Payment Had Been "Arranged For"—Checks and Drafts and What They Import— Qualifying Verbal Representations—The False Pretense Charged and the False Pretense Proved.*

1. A jury might well conclude from the facts and testimony disclosed in this case, that the cashier, who cashed the worthless draft presented by the defendant, was induced so to do by the representation that payment of the draft had been arranged for, rather than from trust and confidence in the defendant arising from a long course of similar dealings.
2. A draft upon a bank, payable upon demand, is indistinguishable from a check, and either a draft or a check, considered alone, imports a representation that the drawer has funds to meet it.
3. Where the false pretense proved was a different false pretense from the one charged, as a majority of the court find to have been the fact in this case, a judgment of conviction must be reversed, notwithstanding the aggravated nature of the offense committed.

HENRY, J.; MARVIN, J., concurs; WINCH, J., dissents.

Error to the Court of Common Pleas of Summit County.

This is a proceeding in error prosecuted by Charles A. Semler to reverse a verdict and judgment of conviction rendered against

him at the October, 1904, Term of the Court of Common Pleas of Summit County in the trial of an indictment for obtaining money by false pretenses.

The indictment charges that on January 23, 1902, Semler presented to Lorenzo D. Brown, as assistant cashier of The Second National Bank of Akron, a certain draft, reading as follows:

"$5,000.00.                    AKRON, OHIO, Jan. 23, 1902.

"On demand pay to the order of The Second National Bank, of Akron, five thousand dollars.

"To First National Bank, Sharon, Pa.

"CHAS. A. SEMLER."

The indictment further charges that he falsely represented to Brown that he then had on deposit in the First National Bank, of Sharon, Pennsylvania, a large amount of money, to-wit, five thousand dollars, which he had a right to draw out by draft in the ordinary mode, and that Brown, believing said representation to be true, cashed the draft at Semler's request on the faith thereof.

Semler's motion for a new trial was overruled, a bill of exceptions was duly perfected exhibiting all the evidence, and petition in error filed in this court. The error complained of is that the evidence fails to show that he made the false pretense charged in the indictment.

An examination of the testimony discloses that Semler was a note broker; that he had formerly been employed by the First National Bank, of Akron; that both during and after his employment, he had been in the habit of making drafts for large amounts and having them cashed or placed to his credit at this bank, and that he thus acted in the transaction of his business as a note broker. On January 23, 1902, the Second National Bank of Akron held for collection a note in the sum of five thousand dollars made by the Cleveland Window Glass Company, and Semler called at the bank to take it up. He told Brown, the assistant cashier, that he had "another note to take up of the same amount at another bank." He procured the blank drafts from Brown and filled them out for five thousand dollars each in the form already described, remarking that he had "arranged

for the notes in another place." He gave Brown both drafts, one to cover the note which was there held for collection, and the other to be cashed for the purpose of taking up the other note at the other bank. He told Brown that the draft had been "arranged for," and, at his request, Brown gave him five thousand dollars in currency and the note which they held for collection, and with the money Semler absconded, both drafts being afterwards returned unpaid.

Brown testifies that he can not tell whether or not he would have let Semler had the money if no verbal representations had been made; he had frequently cashed Semler's drafts before; but this time Semler said they had been "arranged for," and he relied on that statement. If he had known that Semler had no money in the Sharon bank he says he would not have cashed the draft.

The cashier of the Sharon bank testifies that Semler had no money in their bank at that time, neither had he made any "arrangements" with them in regard to these drafts.

Semler's counsel contend, first, that the evidence shows that Brown did not rely upon any representation made by Semler, but that he cashed his draft merely because he reposed trust and confidence in him from a long course of similar dealings. Without stopping to discuss this contention at length, we are content to say that our examination of the evidence leads us to believe that a jury might conclude the contrary from the facts and testimony as above described.

A second contention by plaintiff in error is that the draft, as such, could not of itself amount to a representation that Semler had money on deposit wherewith to meet it; that a check imports such a representation, but a draft does not, and that the characteristics which distinguish this instrument as a draft are its form, in that it was made payable expressly on demand; its being drawn on a bank in another state and not on a bank in this state, and Semler being known to reside and to keep his commercial account here and not there; and, finally, the instrument being considered and called a draft by the parties themselves and by bankers generally. We think, however, in view of the def-

initions of these terms, ''draft'' and ''check,'' in the negotiable instruments law (95 O. L., 187), declaratory as it is in the main of the common law upon that subject, and especially in view of the discussion of the terms ''check'' and ''draft'' in the case of *Oyster & Fish Co.* v. *Bank,* 51 O. S., 106, 109, that a draft upon a bank, payable on demand, is indistinguishable from a check, and that either, considered alone, imports a representation that the drawer has funds to meet it.

A third contention made on behalf of the plaintiff in error presents to our mind a far more serious question, namely, that the verbal representation made by Semler so far qualified the representation which his draft alone would imply as to render the latter incapable of amounting to a representation that he actually had five thousand dollars of money on deposit in the Sharon bank wherewith to meet it. The latter is the false representation which the indictment charges him with making. The representation which he, in fact, made consists of whatever the draft itself implied when considered in connection with his statement that it had been ''arranged for'' and in view of all the circumstances surrounding it. Let us suppose, for example, that Semler had really called up the Sharon bank and obtained its promise to take and carry the Cleveland Window Glass Company's paper to the amount of five or ten thousand dollars, and to honor his drafts for the face of such paper when so placed with them. No deposit of money in Sharon would on this supposition be either necessary or contemplated. But would it not in such case be strictly true that the drafts had been arranged for, and is it not altogether likely that some such arrangement was the idea really conveyed by Semler's words and conduct to Brown's mind, instead of the notion of an actual cash deposit by Semler in the Sharon bank?

It is perfectly true that Semler's representation, even as thus interpreted, was, under the evidence in this case, just as much a false pretense as the one with which the indictment in fact charges him, but is the false pretense that is proved here the same false pretense as the one that is charged, or is it a distinct and different one?

The cashier of the Sharon bank illustrates this distinction clearly when he testifies in one place that on January 23, 1902, Semler had no funds in his (the cashier's) bank; and in another place testifies further to the fact that "there was no 'arrangement' made with our bank."

If the indictment had charged that Semler falsely represented that he had "arranged" with the Sharon bank to honor the draft, there would be no difficulty; nor, the indictment being as it is, would any embarrassment arise if the import of the draft itself had not been qualified by Semler's oral statement. Was that import contradicted, or was it merely weakened, by the oral statement; or was it rather an alternative representation that that he had the money to meet the draft on deposit, or else that he had arranged with the drawee to honor it anyway?

We are all of the opinion that the evidence in this case clearly shows that the offense of obtaining money by false pretenses was committed by Semler, and that, too, under peculiarly aggravated circumstances, which, so far from commending him to the leniency of the court, must invoke rather the law's unmitigated penalty upon him; but a majority of the court find themselves unable to take any other view of the facts in evidence and the law applicable to this case than that the offense proved is not the one charged; and we, therefore, hold that the judgment of the court below, being contrary to law, must be and it is reversed for error in refusing the motion for a new trial, and the cause is remanded to the court of common pleas for further proceedings according to law.

*Rogers, Rowley, Bradley & Rockwell,* for plaintiff in error.

*H. M. Hagelbarger, Prosecuting Attorney,* and *W. E. Slabaugh,* for defendant in error.


WINCH, J.

I dissent in this case for the reason that I believe that the pretense really made by the accused when he said he had arranged for the drafts was a matter to be determined by the jury from the circumstances connected with the uttering of the words, the conduct of the accused, his past relations with the bank, and all

the pertinent facts of the case.  The jury having found that he, in fact, meant that he had money on deposit at Sharon, it would seem that it is not for us to say that he might have meant something else.

It is to be regretted that the prosecutor, having asked a competent witness the meaning among bankers of the words "arranged for," when used as in this case, subsequently withdrew the question and it remained unanswered.  Had this question been answered there would have been no trouble or uncertainty in arriving at a conclusion one way or the other in this case.